**MEYER v. MODERN ELECTRIC EQUIPMENT CO., Inc.**

District Court, W. D. New York. February 11, 1929.

■

Brown, Jackson, Boettcher & Dienner, of Chicago, Ill. (John A. Dienner, of Chicago, Ill., of counsel), for plaintiff.

Briesen & Schrenk, of New York City, and Fleischman & Altman, of Buffalo, N. Y. (Paul Kolisch and Hans Briesman, both of New York City, of counsel), for defendant.

HAZEL, District Judge. This is an action for infringement of patent No. 1,541,988, issued to William Meyer, dated June 16, 1925, for method of and means for drying—specifically a hair and scalp drying equipment largely used for drying women's hair. The method consists of using, simultaneously, electric heat and radiant light with stream of air; the heat being proportioned relative-

ly to the stream of air in aid of circulation and to offset the chilling effect of the air on the hair or scalp and to induce speedy evaporation of the moisture. The patentee asserts that his adaptation is distinguished from the use of mere hot or cold air in hair drying—old expedients—because in the first instance there is rapid evaporation but chilling of the scalp, and in the other drying the scalp slowly and also chilling the subject, while by his method the slow drying and chilling effect are counteracted by projecting a stream of warm air and radiant heat and light upon the scalp, producing a new and beneficial result. Claims 2, 5, 7, and 11 are involved. The apparatus claim 2, and process claim 11, which are regarded as typical of the invention, read as follows:

"In a device of the class described, a casing having a discharge opening, means for projecting a stream of air from said discharge opening, and an electric light arranged in said casing to emit radiant heat and light rays thru said discharge opening, and means other than said electric light for heating the air stream in its passage through the casing."

"11. The process of drying the hair and scalp which comprises projecting a blast of air upon a portion of the scalp and hair to be dried, simultaneously heating the air above atmospheric temperature to expand it and to lower its water vapor pressure, taking up the moisture of the hair and scalp by vaporization by said stream of air at a rapid rate, said vaporization being accompanied by chilling of the hair and scalp and simultaneously projecting radiant heat and light upon the portion of the hair and scalp to counteract the chilling effect."

The combination of claim 2 includes (1) a casing having a discharge opening, (2) means for projecting a stream of air from said discharge opening, (3) electric light arranged to send forth radiant heat and light rays through the discharge opening, and (4) means other than said electric light for heating the air stream in its passage through the casing. Claim 5 includes, as a new element of the combination, the tapered tube with lengthwise fins, and 7 pertains to the structure of the apparatus.

It was the patentee's conception to embody in the casing a rotary fan for blowing the air from the rear, and a fixed reflector beyond the fan, an electric, high-voltage light bulb in front of the reflector, and an annular passage between the edge of the reflector and inner wall of the casing with a heating coil in the annular passage together with a

discharge tube provided with interior ribs to change the spiral air motion, resulting from the rotation of the fan, so as to impart to the air a direct forward motion. By this adaptation the patentee attained speedy evaporation of the moisture and stimulation of the scalp. The fanned air was projected ahead in the casing, expanded by the heat rays, and flowed, in combination with said rays, to the outlet of the nozzle. To secure projection of the air on the hair or scalp, the patentee provided fins or ribs in the tapered part of the casing and extended them lengthwise toward the outlet. By this arrangement separation and scattering of the air at the opening of the tube is avoided. The combination of air, light, and electric force projected and focused upon the desired surface, was of the essence of the invention.

Defendant's expert witness was of the opinion that the light bulb did not aid the expansion of air, as testified by the witness Meyer, to project the combined air forward, asserting that the horizontal (instead of vertical) use of the device deterred any such result. Upon this point, however, I think the heated air generated a certain degree of pressure and velocity, and, co-ordinated by blowing a blast of air, caused an acceleration through the nozzle.

The invention is not limited to hair and scalp drying, but the specification says it may be employed for all similar purposes.

The defenses are noninfringement, limitation of claims, and invalidity. Concededly, hair dryers driven by a fan using blasts of warm air heated either by gas or electric heater for evaporating moisture by a stream of warm air were old. So also the use of a radiant heater on the hair to vaporize the dampness and a current of air to diffuse the vapor. A warm air device was in practical use at the date of the Meyers invention (Plaintiff's Exhibit C-2) and as described in the Halliwell patent No. 738,186. The hair in such device, however, was gradually cooled simply by turning off the heating means; and in an earlier Halliwell patent, No. 591,966, the heat for drying was produced by a gas burner, and speed in drying apparently was the main object of the invention. In both Halliwell structures means were lacking to avoid the chilling effect upon the scalp, which is a prominent feature of the Meyer patent in suit. Indeed, in general drying the hair rapidly by forcing a blast of air through it, and also a fan in connection with an electric heater, were both regarded by users as inefficient and harmful to the scalp, as pointed out in patents to Cannon and Mauger. Cannon

(patent 1,478,635) used an electric resistance current in a cylindrical shell, the shell and fan acting as reflectors to reflect the heat from the resistance wire upon the wet hair, which was placed across the opening of the shell. The fanned air and radiant heat were designed to accomplish Cannon's object, while Mauger (patent 1,006,767) in his modification used a mechanically driven blast of air with heat energy in radiant form, the heat reflecting directly upon the hair, and then applying the current of air for cooling. Both Cannon and Mauger, however, lacked the combination of elements embodied in the claim in issue and failed to produce the result of the Meyer patent. Indeed, the use by Cannon of an incandescent resistance coil was regarded by defendant's expert as impracticable, in that the hair was in danger of becoming ignited; while Mauger, in his efforts to remove moisture by supplying radiant energy, was also at fault because of the danger of the radiant heat injuring the hair. Neither of these devices have gone into commercial use.

The Soles patent, No. 939,106, defendant claims, shows the combination in suit. It is true that the hair is dried by his adaptation by the effect of radiant light and heat from an incandescent lamp located in front of a reflector conjointly with an air blower, yet its practicability was seriously questioned. It is not essentially different from Mauger's structure. It has not come into commercial use, owing, no doubt, to the large opening of the hood, together with the interference of the three lamps used by him, which retarded the efficiency of the fan or blower, in that projecting sufficient air current on a particular surface in conjunction with the radiant heat and light was ineffective or impracticable. Moreover, no means are shown in the Soles device for offsetting chill and stimulating the circulation in the scalp.

The invalidity of claim 5 is urged on the ground that the patent of Voden, No. 366,-535, disclosed longitudinal fins for projecting the air straight ahead and estopping circular motion. The description shows that the air is blown through a discharge pipe, and then a blast of air projected, without whirling, upon an object; but whether the object is removed from the outlet does not appear. Neither of these prior patents are anticipatory.

A few other prior art patents were dwelt upon by defendant, but the patents just mentioned are thought a closer approach than any of the others, and therefore they may be passed.

The novelty of plaintiff's device, as I see it, is essentially in the combination of elements and manner of assembly of two natural forces acting, as plaintiff's counsel puts it, upon a common field of action, namely, one imparting radiant force to the zone or field, while the other imparts a current of warm air; the heat and radiant light being proportioned relatively to the stream of air to obtain the desired result. The patentee was the first to combine old elements to do this, and the claims sued on are believed valid.

The Meyer patent in controversy, true enough, cannot be classed as a broad invention, in view of prior art structures essaying the same object; but I nevertheless think that an advance has been made, and difficulties and interferences with efficiency, to which the prior art was subject, have been overcome by Meyer's adaptation.

The file wrapper shows a change of wording in various instances from the original claims, but I discover no such restriction as to require a precise location of parts or elements.

Defendant's structure is described in the Kolisch patent, No. 1,609,412, and operates, in my opinion, upon the same principle as plaintiff's with slight structural alterations; but it does not suggest a patentably different mode of operation or co-ordination of air forces. The fan in defendant's structure is a part of the rotating reflector, while plaintiff's reflector is stationary and the fan is separated from it; but defendant's fan performs the identical function. The patent is not limited to the exact structural details, since the specification says that "the fan may be attached or made a part of the outer edge of the reflector." The different location in the infringing dryer of the heater is likewise inconsequential, since it functions in the same way as plaintiff's, namely, to warm the air blown from the outlet. Aside from this, none of the disputed claims refer to locating the heater either in front or to the rear of the fan. Defendant also, in its tapered shell, has longitudinal fins to produce suitable focusing of the blast of air, as in plaintiff's structure. These alterations are all equivalent adaptations in view of the reasonable scope to which I deem the involved claims are entitled. It is next contended that claim 11 is merely functional; but, as the elements of the combination are co-ordinated to produce a new result in their action upon the wet and dry hair, this contentiton must be regarded as unsubstantiated. It is also to be noticed that, soon after plaintiff's de-

vice was put on the market, its value over other hair drying instrumentalities received speedy commercial recognition, and that the defendant company with its later structure entered the field and sold at a lower price.

The defendant Modern Electric Equipment Company, Inc., sold the infringing device in this district, while the Halliwell-Shelton Electric Corporation, the manufacturer thereof, has interposed a defense and may be regarded as a real defendant.

The claims 2, 5, 7, and 11 in controversy are valid and infringed by the exhibit structure manufactured and sold by the defendant Halliwell-Shelton Electric Corporation, and a decree for plaintiff may be entered, with costs.